IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN HALVERSON,

                              Plaintiff,

  v.                                                       OPINION and ORDER

UNITED STATES OF AMERICA,                        19-cv-477-jdp

                              Defendant.

---

Plaintiff John Halverson won a shotgun in a raffle. But the federal government refused to approve the transfer of the shotgun because Halverson had a misdemeanor conviction for disorderly conduct, which the government thought was a crime of domestic violence, which would preclude Halverson from legally possessing a firearm. Halverson filed this lawsuit, contending that the government had wrongfully denied the transfer because his conviction was not a crime of domestic violence. Dkt. 1. While the case was pending, the government reversed itself and approved the transfer. So Halverson got his shotgun, but only after filing this suit.

Two motions are before the court. The government moves to dismiss Halverson's complaint as moot, Dkt. 19, and Halverson moves for summary judgment, Dkt. 14. The court concludes that the case is moot because he's gotten his shotgun and the government poses no risk to his future firearm possession. The court will grant the government's motion to dismiss, deny Halverson's motion for summary judgment, and close this case.

BACKGROUND

The following information is drawn from Halverson's complaint and from other documents submitted by the parties.[1] The parties do not dispute these facts.

Halverson won a shotgun in a raffle held by a sporting-goods shop on August 30, 2016. Because the shop was a licensed federal firearms dealer, Halverson was required to undergo a background check before the shop could transfer the shotgun to him. The check was performed through the FBI's National Instant Criminal Background Check System (NICS). A NICS background check searches multiple databases containing records that might show that an individual is barred from possessing a firearm.

The FBI denied the transfer based on 18 U.S.C. § 922(g)(9), which prohibits firearm possession by anyone who has been convicted "of a misdemeanor crime of domestic violence." The FBI cited Halverson's misdemeanor arrest and conviction in 1990 for disorderly conduct under Wis. Stat. § 947.01. According to Halverson's arrest record, the victim was Halverson's live-in girlfriend, against whom he had used physical force. Dkt. 21, ¶ 12.

In 2019, shortly before Halverson filed this lawsuit, the FBI told Halverson in a letter to his counsel that it had subsequently determined that Halverson's 1990 arrest no longer barred the transfer, although it did not explain why. Dkt. 12-1, at 1. But the letter also said that the FBI had subsequently identified an arrest for failure to pay child support. Non-payment of child support under Wis. Stat. § 948.22 can be either a felony or misdemeanor,

---

[1] Courts do not usually look beyond a plaintiff's complaint in considering a motion to dismiss. But the government's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the factual basis of Halverson's standing to sue, so the court may consider documents outside the complaint without converting the motion into one for summary judgment. *Sanchez v. Edgar*, 710 F.2d 1292, 1295 n.2 (7th Cir. 1983).

and a felony conviction would prohibit Halverson from owning a firearm under 18 U.S.C. § 922(g)(1). The FBI was unable to determine the disposition and level of conviction for the child-support charge, and thus it could not determine whether that charge would bar the transfer. The letter stated that Halverson could contact the Rock County Sheriff's Office to obtain the missing information.

As part of his motion for summary judgment in this lawsuit, Halverson filed a copy of a court record that showed that his child-support arrest did not result in a felony conviction. Dkt. 17. The government's counsel in this case provided that document to the FBI the same day that Halverson filed it. Dkt. 22, ¶ 2. An FBI records custodian says in a declaration that Halverson's criminal history record was updated by the Wisconsin Department of Justice to reflect the nature of his conviction and that, as of March 12, 2020, Halverson was not prohibited from receiving or possessing a firearm under federal law. Dkt. 21, ¶¶ 12–13. The FBI placed the transfer into "proceed" status on March 12 and sent another letter to Halverson through his attorney on that date informing him that he was eligible to receive and possess firearms as of that date. *Id.*, ¶ 12.

ANALYSIS

"A claim becomes moot, and thus strips a court of jurisdiction under Article III, '[w]hen a party with standing at the inception of the litigation loses it due to intervening events.'" *Freedom from Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1050 (7th Cir. 2018) (quoting *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010)). In his complaint, Halverson requested two types of relief: (1) injunctive relief under 18 U.S.C. § 925A ordering that the shotgun transfer be approved; and (2) declaratory relief under the Declaratory

3

Judgment Act, 28 U.S.C. § 2201, stating that federal law does not bar him from possessing a firearm or ammunition.

Halverson has already received all the substantive relief he asked for in his complaint. Not only has the government approved the shotgun transfer, it has also informed him in a letter that nothing in his current criminal record bars him from firearm ownership, which is essentially what he asked the court to state in a declaratory judgment.

But even if a declaratory judgment would give some benefit to Halverson that the government's letter does not, he still must show that he has standing to seek such a judgment. A request for declaratory relief alone does not automatically give a plaintiff standing, as "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction." *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008) (quoting *GNB Battery Techs. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995)). To demonstrate his standing to sue for declaratory relief, Halverson must show that there is an actual controversy between himself and the government: "that [he] has sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendant['s] conduct." *Foster v. Center Twp. of LaPorte Cty.*, 798 F.2d 237, 242 (7th Cir. 1986).

The government argues that there is no longer any such actual controversy between the parties because Halverson's § 925A claim was mooted when the government approved the transfer. Halverson responds that his claim is not moot for three reasons: (1) he is challenging government conduct that is based on an ongoing policy; (2) the government has voluntarily ceased its challenged conduct but may later resume it; and (3) the government's conduct falls under the category of conduct capable of repetition but likely to evade review. But a common thread links each of the three doctrines on which Halverson relies: each requires that the

4

government continues to pose a threat to his interests. *See Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 932–33 (7th Cir. 2013) (ongoing-policy doctrine requires plaintiff to show that challenged policy poses a "continuing" threat of "a substantial adverse effect on the [plaintiff's] interests") (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)); *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1023 (7th Cir. 2016) (voluntary-cessation doctrine inapplicable if defendant shows that alleged wrong cannot reasonably be expected to recur); *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (doctrine regarding conduct capable of repetition yet evading review applies only if "there is a reasonable expectation that the same complaining party will be subject to the same action again") (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

There is no threat to Halverson's present interests because the government has approved the transfer of the shotgun. Halverson hasn't identified any threat to his future interests, either. He doesn't expressly allege he intends to obtain more firearms, although that's implicit in some of his arguments. But his future firearm purchases are not in jeopardy because he has a letter from the government unambiguously stating that nothing in his criminal record, including his conviction for disorderly conduct, would prevent him from receiving or possessing firearms. Courts presume that a governmental defendant will honor its pledge not to resume challenged conduct that it has voluntarily ceased, *Hummel*, 817 F.3d at 1023, and Halverson identifies no reason to believe that the government will renege on its statement that Halverson's past conviction doesn't prohibit him from firearm ownership. Halverson raised the policy issue in his response to the government's motion to dismiss, where he says that he is challenging an FBI "policy of denying firearm transfers based on misdemeanor convictions that are not crimes

of domestic violence under 18 U.S.C. § 922(g)(9)." Dkt. 25, at 7. But he did not allege the existence of such a policy in his complaint and he cites no evidence for it now.

The government has approved the shotgun transfer and told Halverson that his past criminal record will not bar him from future firearm ownership, so there is no longer a case or controversy between the parties. The court no longer has subject-matter jurisdiction over this lawsuit, and it will grant the government's motion to dismiss.

ORDER

IT IS ORDERED that:

1. Plaintiff John Halverson's motion for summary judgment, Dkt. 14, is DENIED.

2. Defendant United States of America's motion to dismiss, Dkt. 19, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered June 9, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge